MARIA C. PEREIRA *vs.* HARRY WAXMAN *et al.*

APRIL 25, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This proceeding was begun by the filing, on March 28, 1944, of a bill in equity by the owner in fee simple of a certain lot of land, with a dwelling house thereon, located on a plat of land in the city of Providence referred to as the "Sumner Plan". That lot is numbered 84 on the plat and fronts westerly on Mount Vernon street, which runs approximately north and south. When the bill was filed, the respondents were, and still are, owners in common of lot No. 79 on this plat, with a dwelling house thereon. That lot is bounded on the east by St. James street and on the west by the complainant's lot.

For about forty years before the bill was filed there were sewer pipes which ran underground from lot 79 underneath the cellar of lot 84 and carried sewage from lot 79 into a private drain underneath Mount Vernon street. The sewage from both premises flowed through these pipes and drain into a public sewer farther south underneath Glenham street.

A few years before the bill was filed the pipes carrying sewage from lot 79 underneath lot 84 burst in one or more places and let sewage escape into the complainant's cellar. She then demanded of the respondents, as the owners of lot 79, that they repair the pipes carrying sewage from their lot and that they make good the damage caused to her by the escape of such sewage.

The respondents refused any compliance with that demand and therefore the complainant, under protest and for her own protection, had been obliged to have repairs made at great expense to her, to which expense respondents have refused to make any contribution. Not long afterwards similar leakage from the respondents' pipes occurred and again, to protect her property, she had to make further repairs in them; and the respondents continued to refuse to make any contribution to the cost of such repairs.

The complainant therefore brought the present bill of complaint, setting forth, in substance and effect, the facts above stated and prayed that the respondents be permanently restrained and enjoined from further use, as a sewer or drain, of those pipes lying underneath the surface of the ground within the boundaries of her lot; that they be required to remove those pipes within such boundaries or to "provide for the severance and capping of said pipes so as to prevent flowage from said lot No. 79 into said lot No. 84" and to prevent the sewage from their property from backing up or running into her property as a result of such severance.

The respondents filed an answer in which they admitted the existence of the pipes which carried the refuse from their property to a drain located in Mount Vernon street, but said that they were unable to state where such pipes passed from their dwelling, or to particularly designate their location or wherein or how they connected with the sewerage system of the complainant.

They denied that the presence of such pipes under the yard and dwelling of the complainant was concealed from and unknown to her and neither admitted nor denied that she first became aware of it on January 29, 1943, when the pipes "became plugged and the sewage backed into" her house. They alleged that they had, running with their land and continuously existent for about thirty-nine years, an open, notorious and necessary right to the use of the sewer pipes running under the complainant's house and carrying

sewage from their property into the pipes under that house and emptying into the drain in Mount Vernon street.

The complainant filed a replication stating that "no right or easement distinguished from mere permission existed" in her property in favor of the respondents or ran with the land owned by them. She also denied that there ever was a common ownership of these two properties; but she admitted that there was a transfer as of May 4, 1905, by Charles T. Johnson and his wife Mathilde T. Johnson, as owners in common, of the real estate now owned by the complainant, and a transfer, as of April 19, 1906, by Charles T. Johnson alone of the real estate now owned by the respondents.

At the hearing of this cause in the superior court on the bill, answer and replication, there was introduced in evidence original or certified copies of deeds, and other records, which carried the title of lot 79, fronting on St. James street, to Charles T. Johnson and from him, by mesne conveyances or otherwise, to the respondents. In like manner there were other records introduced which carried the title of lot 84, fronting on Mount Vernon street, to Charles T. Johnson and his wife, and from them, by mesne conveyances or otherwise, to the complainant.

The deed to Charles T. Johnson of lot 79 was dated June 12, 1894, and the deed to Charles T. Johnson and his wife, conveying to them as tenants in common lot 84, was executed October 16, 1900. On March 18, 1902, as co-owners of lot 84, they filed an application with the commissioner of public works of the city of Providence for permission to lay a private drain in Mount Vernon street so as to connect the sewer pipes from their premises with the public sewer in Glenham street. This application was granted on March 24, 1902 and such drain was accordingly laid and was finished on April 12, 1902.

There being no public sewer in St. James street and it being impracticable at that time, according to the evidence, to make a sewer connection through that street from Charles T. Johnson's lot 79, he and his wife then filed, on August 29,

1904, with the commissioner of public works, an application for permission to lay a private drain from lot 79 on St. James street to the drain in Mount Vernon street. This application was granted on the same day; and the uncontradicted evidence shows that a drain was constructed accordingly, which ran from lot 79, then owned by Charles T. Johnson, under and through lot 84, then owned by him and his wife, to the private drain in Mount Vernon street. Thus the sewage from both houses was carried through the above-described private drain under Mount Vernon street and into the public sewer in Glenham street. There is evidence indicating that it is still impractical to make a sewer connection from lot 79 to the drain in St. James street.

By a deed executed on May 4, 1905, Charles T. Johnson and his wife conveyed all of lot 84 on Mount Vernon street to John A. Peterson and his wife. This conveyance was made subject to a certain mortgage and contained a covenant against all incumbrances excepting that mortgage. By sundry conveyances and inheritance that property passed to and is now vested in the complainant in this cause.

By deed of Charles T. Johnson, dated April 19, 1906, in which his wife released her right of dower, the title to lot 79 on St. James street passed to Arthur T. Roper and his wife and from them, by various mesne conveyances and inheritance, it passed to and is now vested in the respondents.

The complainant relies greatly on the contention that there is in the cause no evidence from which it can reasonably be found that the complainant or any of her predecessors in the title and possession of the Mount Vernon street property had knowledge or notice that there were pipes underneath that property which were carrying sewage from the respondents' property to the private drain under Mount Vernon street. But there is such evidence.

Arthur T. Roper, to whom and his wife the St. James street property was conveyed by Charles T. Johnson on April 19, 1906, and who continued to be an owner of it for about fifteen years, was a witness for the respondents. He testified

that during the time when he lived there he knew of the existence of the private drain running from that property through lot 84 on Mount Vernon street and used it continually, making no change in it. He testified further that he was told by John A. Peterson, who then, with his wife, owned the latter property and who was not living at the time of the hearing of this cause, that the drain from the St. James street property went through the Mount Vernon street property and into the private drain in the latter street.

Alberto Pereira and his wife Maria C., who is the complainant in this cause, became, on May 17, 1913, by virtue of a deed from John T. Marshall, the owners as tenants in common of the Mount Vernon street property. Rachel Jewett, one of the respondents, testified that about 1930, when she was living in the St. James street property, which had been conveyed to her husband David Jewett and Harry Waxman by a deed of July 11, 1928, there was some trouble with the drain pipes there.

She learned then that there was a drain going from lot 79 under lot 84 and into the private drain in Mount Vernon street. She testified that she was having some trouble with the sewer and had a man digging up the yard in the former property, where she was living; that Alberto Pereira, who was then living on lot 84 on Mount Vernon street, came over to the fence and asked what was the matter; that she then told him that the trees were growing into the pipes and he said: "If it would be on my side of the fence I would have to pay for it." According to her testimony he further said: "Don't you know the pipes run into my land?" and she said, "Yes."

This testimony and that of Arthur T. Roper, if believed by the trial justice, as it evidently was, would tend to support a conclusion by him that the complainant, as owner and occupant of the Mount Vernon street property, had for many more than ten years before the occurrence of the trouble involved in the instant cause known of the existence of the pipes carrying sewage from the St. James street prop-

erty through the Mount Vernon street property and into the drain under the latter street, and had recognized them as being rightfully there for the benefit of the owners of lot 79.

Therefore we cannot say that there was no evidence to support the trial justice's finding, in substance and effect, that the successive owners of the Mount Vernon street property knew for many years, certainly many more than ten, of the existence of the pipes under that property, carrying sewage from the St. James street property to the drain under Mount Vernon street; that none of these owners did anything to interfere with those pipes or to prevent the owners of the St. James street property from having the benefit of them; and that, under the circumstances, the respondents, as successors in title to the St. James street property, were entitled to such benefit without any interference by the owners of the Mount Vernon street property.

We therefore are of the opinion that in the decree appealed from there is no error in the finding that the respondents have a legal right to have such drain connected with their property and extending across the property of the complainant and into the drain under Mount Vernon street.

In view of that conclusion we see no necessity for discussing the question whether John A. Peterson and his wife, to whom Charles T. Johnson and his wife conveyed lot 84 on Mount Vernon street, held that lot subject to any easement for the benefit of Charles T. Johnson. There are many other reasons of appeal relied on by the complainant besides those which we have discussed and overruled. But upon consideration we see no sufficient reason for discussing any of them and they are all overruled.

Whether the complainant has the right to compel the respondents to repay to her all or any of the moneys which she had expended for the repair of the sewer pipes under her property was not passed upon by the superior court and we see no reason for discussing or deciding that question at this time.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Augustine H. Downing,* for complainant.

*Kirshenbaum & Kirshenbaum and John A. Tillinghast,* for respondents.